UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| PIRKKO ONVERVA KOPPERI and MARIKA KOPPERI-GRONLUND | : : : : : | |
| v. | : : | CIV. NO. 3:08CV451 (WWE) |
| SIKORSKY AIRCRAFT CORP., INC., HELICOPTER SUPPORT, INC., HR TEXTRON, INC., and PLASMA TECHNOLOGIES, INC. | : : : : : | |

RECOMMENDED RULING ON DEFENDANTS'
MOTION TO DISMISS ON THE GROUND OF FORUM NON CONVENIENS

INTRODUCTION

This is a wrongful death and product liability action arising out of an August 2005 helicopter crash in Tallinn Bay in Estonia that killed twelve passengers and two pilots. Plaintiffs are Pirkko Onverva Kopperi and Marika Kopperi-Gronlund, the wife and adult daughter of one of the Finish passengers killed in the Baltic Sea crash. [Doc. #1].  Defendants are the helicopter manufacturer, the Sikorsky Aircraft Corporation ("Sikorsky"), Helicopter Support, Inc. ("HSI"), H.R. Textron, Inc. ("HR Textron"), and Plasma Technology Inc. ("PTI") manufactured component helicopter parts.

Defendants Sikorsky, HST, HRT and PTI move to dismiss this

1

action on the ground of forum non conveniens.[1] For the reasons that follow, the Motion to Dismiss **[Doc. #60]** is conditionally **GRANTED**.


STANDARD OF LAW

In deciding a motion to dismiss, the court accepts the allegations of a complaint as true and construes them in a manner favorable to the pleader.   Hoover v. Ronwin, 466 U.S. 558, 587 (1984); Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998).   The court must draw all reasonable inferences in the plaintiff's favor.   See, e.g., Yung v. Lee, 432 F.3d 142, 146 (2d Cir. 2005) (discussing Rule 12(b)(6) motion to dismiss); Lunney v. United States,  319 F.3d 550, 554 (2d Cir. 2003) (internal citations omitted) (discussing Rule 12(b)(1) motion to dismiss). The mover and the pleader may use affidavits and other materials beyond the pleadings themselves in support of or in opposition to a challenge to jurisdiction.[2]   Land v. Dollar, 330 U.S. 731, 735

---

[1]At oral argument on April 17, 2009, defendants Sikorsky, HSI and PTI moved to join in HRT's motion.

[2]In deciding this motion the Court considered HR Textron's Amended Memorandum of Law with exhibits [Doc. 63], plaintiff's Memorandum of Law in Opposition, [Doc. #124], Declaration of Michael P. Verna with exhibits [Doc. #125], and Erratum Re: Exhibit A. to Declaration of Michael P. Verna with exhibit [Doc. #126], Declaration of Bradley Bowles with exhibits [Doc. #123], and Defendant's Reply to Response [Doc. #132]. This motion was referred by Judge Eginton for a recommended ruling on July 11, 2008. [Doc. #95].

2

(1947) (stating "general Rule [that] the District Court would have the authority to consider questions of jurisdiction on the basis of affidavits as well as the pleadings."); <u>Exchange Nat. Bank of Chicago v. Touche Ross & Co.</u>, 544 F.2d 1126, 1130 (2d Cir. 1976), <u>cert.</u> <u>denied</u>, 469 U.S. 884 (1984). "[I]n the determination of a motion to dismiss for forum non conveniens, the court may consider affidavits submitted by the moving and opposing parties," <u>In re Air Crash Near Peixoto De Azeveda, Brazil, on September 29, 2006</u>, 574 F. Supp. 2d 272, 279 n.1 (E.D.N.Y. 2008) (quoting <u>Vanity Fair Mills, Inc. v. T. Eaton Co.</u>, 234 F.2d 633, 645 (2d Cir. 1956), and make findings of fact. <u>Id.</u> (citing <u>Pollux Holding Ltd. v. Chase Manhattan Bank</u>, 329 F.3d 64 (2d Cir. 2003)).

The instant Motion to Dismiss is based, <u>inter alia</u>, on the common law doctrine of <u>forum non conveniens</u>. "The principle of <u>forum non conveniens</u> is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 507 (1947). Thus, <u>forum non conveniens</u> is a discretionary device, which, in rare circumstances, permits a court "to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." <u>Wiwa v. Royal Dutch Petroleum Co.</u>, 226 F.3d 88, 100 (2d Cir. 2000) (internal quotation omitted). As such, "[d]ismissal for <u>forum non</u>

conveniens reflects a court's assessment of a range of
considerations, most notably the convenience to the parties and
the practical difficulties that can attend the adjudication of a
dispute in a certain locality." Sinochem Int'l Co. v. Malay.
Int'l Shipping Corp., 549 U.S. 422, 423 (2007) (internal
quotation omitted).  "The forum non conveniens determination is
committed to the sound discretion of the trial court." Piper
Aircraft Co. v. Reyno, 454 U.S. 235, 266 (1981).


BACKGROUND

     On August 10, 2005, Copterline Oy ("Copterline") was
operating a Sikorsky S-76C+ helicopter, registration OH-HCI, on a
scheduled passenger service between Helsinki, Finland, and
Tallinn, Estonia. See Estonian Aircraft Accident Investigation
Commission's "Final Report Aircraft Accident Investigation," Ex.
A to Verna Decl. Doc. #126 (hereinafter the "Final Report"). In
August 2005, there were fourteen scheduled flights from Helsinki
each weekday, departing from Helsinki on the hour, and returning
from Tallinn at thirty minutes past the hour.  The route was 80
km and the usual flight time was 18 to 20 minutes. Id.

The Accident

     On August 10, 2005, the helicopter OH-HCI was operating from
its homebase (Copterline) at Helsinki/Malmi Airport in Finland.
The flight crew was on its tenth leg, i.e., the return flight of

4

their fifth round trip to Tallinn, that day.

     At approximately 12:39PM (local time), the helicopter took

off from the Tallinn City Hall heliport for Copterline heliport

in Helsinki.   At approximately 12:41PM, the attitude of the

helicopter changed rapidly. It pitched up abruptly and rolled to

the left.  Following the initial upset flight condition,

according to the recorded flight data, the helicopter began a

rotation to the right with significant oscillations in pitch and

roll attitudes.   An air traffic controller at the Tallinn

Airport observed the helicopter disappear from radar coverage and

witnesses saw the helicopter impact the water.   Flotation

devices on board the helicopter did not fully deploy, causing it

to sink within seconds of impact.  A search and rescue operation

was initiated within two minutes of the accident.   There were no

survivors. Id. at 1. The decedents included Omni Matti Kopperi,

whose survivors and estate are plaintiffs in this action.


The Accident Investigation

     A search and rescue operation was initiated immediately

following the accident.  [Doc. #126 Commission's Final Report at

1].  All fourteen of the occupants were fatally injured.   Id. at

2. On August 13, 2005, three days after the accident, the

wreckage of the helicopter was recovered from the sea. Id. at 6.

It was transported to a hangar at Tallinn Airport for a detailed

examination, and later moved to the Estonian Air Force base at Amari. [Doc. #63, Ex. A at 6].

The accident was investigated by an Aircraft Accident Investigation Commission appointed under decree No. 313 of the Minister of Economic Affairs and Communications, Estonia. [Doc. #126, Ex. A, Final Report at IX]. The Commission was charged with investigating the circumstances of the accident, determining the causes of the accident and formulating safety recommendations, as appropriate, in order to prevent aircraft accidents or incidents. It was not the function of the Commission to assign fault or to determine civil or criminal liability.  The accident was investigated in accordance with the Estonian Aviation Law, in accordance with the Standards and Practices of the International Civil Aviation Organization (ICAO). As the State of Registry of the helicopter, Finland appointed an accredited representative and technical advisors to him to participate in the investigation. Because the United States was the State of Design and the State of Manufacture of the helicopter, the United States of America's National Transportation Safety Board ("NTSB") appointed an accredited representative.  Id. Sikorsky, HR Textron, Honeywell, HSI and the Federal Aviation Administration ("FAA") participated in the investigation as technical advisors to the USA accredited representative. Id. at IX-X.  France ("Bureau d'Enqueltes et d'Analyses" ("BEA")), as the State of

Manufacture of the engines, appointed an accredited representative to the investigation.  Id. at X.

A Final Accident Report was issued on August 6, 2008.


The Helicopter

The helicopter, was manufactured by Sikorsky in West Palm Beach, Florida, in February 2000; and was registered in Finland on March 21, 2000, with nationality and registration marks OH-HCI, by Copterline Oy.  Id. at 6.

The Sikorsky S-76 is a general-purpose all weather helicopter. It was used extensively for passenger transport, corporate executive transport, offshore oil support and general utility operations. The normal flight crew compliment in regular passenger flights was two pilots. The passenger section of OH-HCI was configured for a maximum of twelve passengers, three rows of benches with four passengers per row.  Id.

Copterline, a Finnish company, was the owner, the operator and the maintenance organization for the helicopter.  Id. at 8.


The Parties

Plaintiffs are Pirkko Onverva Kopperi and Marika Kopperi-Gronlund, the wife and adult daughter of Onni Matti Kopperi, a Finnish passenger.  Plaintiffs reside in and are citizens of the

Republic of Finland. [Doc. #1 ¶¶3, 4].

Defendant Sikorsky, a Delaware corporation with its principal place of business in Connecticut, is the designer, manufacturer and seller of the accident helicopter. [Compl. Doc. #1 ¶6; Bowles Decl. Ex. 3 ¶11].  Defendant HSI, a Connecticut corporation with its principal place of business in Trumbull, Connecticut, is a wholly-owned subsidiary of Sikorsky.  [Doc. #1 ¶8; Bowles Decl. Ex. 3 ¶13]. Defendant HR Textron is a Delaware corporation with its principal place of business in Santa Clara, California. [Doc. #1 ¶7; Bowles Decl. Ex. 3 ¶12]. Defendant Plasma Technologies, Inc. ("PTI"), a California corporation with its principal place of business in Torrance, California, is the supplier of plasma applied coatings and performed work on certain component parts of the accident helicopter. [Doc. #1 ¶5; Bowles Decl. Ex. 3 ¶10]. A second PTI plant is located in South Windsor, Connecticut. [Bowles Decl. Ex. 18 at 1].


Stipulation

Defendants Sikorsky, HSI and HRT in <u>Fredriksson,</u> 07CV214 (ILG) and in <u>Kopperi v. Sikorsky</u>, 07CV3146(ILG), stipulated and agreed, as a condition of dismissal in the Eastern District of New York in favor of a Finnish forum,[3] to all of the following:

_____

[3]Defendants argued to Judge Glasser in the Eastern District of New York "that as compared to New York or Connecticut, Finland [was] the most convenient forum for these actions to be litigated

-Consent to the jurisdiction of the Finish courts for purposes of defending these civil actions;

-Tolling any applicable statute of limitations for a period of 120 days after dismissal of these civil actions;

-Making available to the Finnish courts any witnesses or documents in their possession, custody, or control that the Finnish court may deem relevant; and

-any other conditions as may be set by the Court. [Doc. #63 Ex. J].

Proposed Deposition Witnesses

The plaintiffs in Fredriksson and Kopperi estimate they will need to conduct twenty-two depositions; fifteen witnesses are located in Connecticut (Sikorsky/HSI employees), three witnesses in Texas (HRT employees), two witnesses in California (PTI employees), one witness in Washington D.C. (NTSB employee) and one witness in Estonia (Estonian Commission member). [Copterline. Let. 4/6/09; Fredriksson/Kopperi Let. 4/8/09].

Defendants Sikorsky, HSI, HRT and PTI estimate they will conduct thirty-five depositions; twenty-five witnesses are

---

. . . ."   Fredriksson v. Sikorsky, Nos. 07CV214(ILG), 07CV3146(ILG), 2008 WL 752469, *2 n.7 (E.D.N.Y. Mar. 19, 2008). Judge Glasser found that because the Eastern District of New York lacked personal jurisdiction, the court could not entertain the forum non conveniens motion and that the motion should be made in the District of Connecticut.  Id. at *6.

located in Finland (of which eleven are identified as Copterline witnesses,[4] four witnesses are Finnish CAA members, three witnesses are the plaintiffs, five witnesses will testify regarding economic loss, the remaining witnesses are not identified); six witnesses are located in the United Kingdom (identified as Super Puma waterspout incident), two witnesses are located in Estonia (identified as eyewitnesses) and two witnesses are identified as "unknown passenger, location unknown." [Def. Let 4/6/09].

Other Lawsuits

Copterline filed an action against defendants Sikorsky, HSI, and PTI, Copterline v. Sikorsky, 07CV1450(WWE), alleging breach of express warranty, breach of implied warranty, negligence, gross negligence, and failure to instruct/warn.  [07CV1450(WWE), doc. #1]. That case has now been settled. [Stip. of Dismissal, Doc. #219]

Plaintiffs Ulla Fredriksson and Marjala Peurala and Antti Olavia Peurala, surviving family members of the two Finnish pilots who were killed in the accident, have sued Sikorsky, HSI, HRT and PTI in Fredriksson v. Sikorsky, et al, 08CV450(WWE).  As

_____

[4]Copterline Oy was sold after the accident and Copterline has undergone management changes.  "A number of non-management employees, including persons involved in the maintenance of the fleet, are no longer employed by Copterline." [Doc. #177 at 9].

in the complaint in this case, the <u>Fredericksson</u> plaintiffs bring claims against defendants under the theories of strict product liability, breach of warranty, negligence and willful misconduct/gross negligence. Plaintiffs in <u>Kopperi</u> and <u>Fredricksson</u> are represented by the same counsel.

DISCUSSION

Defendants move to dismiss plaintiffs' suit pursuant to the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>, arguing that "convenience and the ends of justice will best be served by dismissing these actions in favor of litigating the Finnish plaintiffs' claims in Finland." [Doc. #63 at 9].

A.   Forum Non Conveniens

While the "district courts enjoy broad discretion in applying [the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>, the Second Circuit,] sitting <u>en</u> <u>banc</u> in <u>Iragorri v. United Techs. Corp.</u>, 274 F.3d 65 (2d Cir. 2001), outlined a three-step process to guide the exercise of that discretion." <u>Norex Petroleum, Ltd. v. Access Indus.</u>, 416 F.3d 146, 153 (2d Cir. 2005). At step one, the district court determines the degree of deference properly accorded the plaintiff's choice of forum. <u>See</u> <u>id.</u> At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. <u>See</u> <u>id.</u> Finally, at step three, the court balances the private and public interests implicated in the choice of forum. <u>See</u> <u>id.</u> Defendants bear the burden of persuasion on each element.

1.   Deference to Plaintiffs' Choice of Forum

Any review of a <u>forum</u> <u>non</u> <u>conveniens</u> motion starts with "a strong presumption in favor of the plaintiff's choice of forum." <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 255 (1981). In fact,

"it is generally understood that, unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Norex Petroleum, Ltd. v. Access Indus., 416 F.3d 146, 154 (2d Cir. 2005) (internal quotation omitted). However, courts recognize that "the degree of deference given to a plaintiff's forum choice [can vary] with the circumstances." Iragorri, 274 F.3d at 71 (internal quotation omitted). Typically, "the greatest deference is afforded a plaintiff's choice of its home forum, while less deference is afforded a foreign plaintiff's choice of a United States forum." Norex Petroleum, Ltd., 416 F.3d at 154 (internal citations and quotation omitted); see also Piper, 454 U.S. at 255-256.  As the Second Circuit emphasized in Iragorri, these are not "abrupt or arbitrary" rules.  Iragorri, 274 F.3d at 72.  Rather, they illustrate "a broader principle under which the degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale" depending on the degree of convenience reflected by the choice in a given case.  Id. at 71.  "Because the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference." Piper Aircraft Co., 454 U.S. at 256.

In determining the degree of deference to which a plaintiff's forum choice is entitled, a district court must undertake a review of the totality of the circumstances

surrounding the plaintiff's forum selection.  See Iragorri, 274 F.3d at 71-72.  Specifically, the court may consider relevant factors such as: (1) whether the plaintiff is a U.S. citizen; (2) convenience to the plaintiff of the chosen forum as compared to its home forum; (3) availability of witnesses in the forum; (4) defendant's amenability to suit in the forum; (5) availability of appropriate legal assistance; and (6) evidence of forum shopping to be subject to favorable law, "the habitual generosity of juries in the United States, [and] the plaintiff's popularity or the defendant's unpopularity in the region." Iragorri, 274 F.3d at 72.  The Court will consider these factors in turn.

    (a)  Plaintiffs are Citizens of Finland

    To begin, it is important to note that all of the survivor and estate representative plaintiffs in this suit are Finnish citizens.  See Compl. Doc. #1.  Likewise, the decedents these plaintiffs represent were all Finnish citizens.  See id. Copterline Oy, the owner of the helicopter and the decedents' employer, is a corporation organized under the laws of Finland with its principal place of business in Helsinki.  See Complaint, 07CV1450, Copterline v. Sikorsky, Doc. #1.  As previously noted, the fact that plaintiffs are not citizens of the United States means that, from the outset, their forum choice is entitled to less deference.  See Norex Petroleum, Ltd., 416 F.3d at 154.

    (b)  Convenience of Plaintiffs' Chosen Forum as Compared to Their Home Forum

The second factor the court considers is the relative
convenience of the chosen forum for the plaintiffs.  Plaintiffs
claim that the District of Connecticut is a more convenient forum
than Finland because, <u>inter</u> <u>alia</u>, Sikorsky designed and
manufactured the helicopter at issue in Connecticut, and thus the
records, witnesses, and experts most relevant to the plaintiffs'
product liability claims are both easily accessible in the
District of Connecticut and within the compulsory process of the
court. Bowles Decl. Ex. 4, 5. HSI also admits its principal place
of business is in Connecticut and all of its facilities are in
Connecticut. Bowles Decl. Ex. 13.  Further, the plaintiffs point
out, the defendants' records are in English, and it is likely
that the majority of the witnesses and experts relevant to the
plaintiffs' product liability claims do not speak Finnish.[5]
Moreover, because of the involvement of the NTSB and Sikorsky, HR
Textron, Honeywell, HSI and the FAA as technical advisors in the
Estonian accident investigation, many documents and witnesses
relating to that investigation are located in Connecticut and the
United States, and are therefore more easily accessible in the

---

[5]Defendants' legal expert Dr. Heiskanen stated that the
Finnish Courts accept documents in Finnish, Swedish and English.
"[T]he language of court proceedings is Finnish or Swedish. All
written and oral pleadings must be filed or presented in either
of these languages.  However, judges may accept English language
documents to be filed without translation into Finnish or
Swedish, depending on the circumstances of the case" [Heiskanen
Aff. ¶16 at 7].

District of Connecticut than they would be in Finland. Finally, plaintiffs point out that "none of the other defendants have joined HR Textron's motion."[6] [Doc. #169 at 9, 13].

The Court does not question these arguments.  Undoubtedly, there exist in the United States generally, and in Connecticut specifically, records and witnesses essential to the plaintiffs' suit.  That said, the Court finds that the plaintiffs have underestimated the importance of documents and witnesses located outside the United States.

First, it is important to keep in mind that the accident at issue in this dispute took place in the Baltic Sea between Tallinn and Helsinki, involved a Finnish corporation operating a helicopter which had been serviced and maintained in Finland, and led to the deaths of six Finnish citizens, four Estonian citizens and two citizens of the United States.  Further, regardless of any assistance the NTSB and defendants may have provided to the Estonian investigators, the primary investigation of the accident is taking place in Estonia; the Estonian Aircraft Accident Investigation Commission issued the final accident report. [Doc. #126].

Second, while the records and witnesses concerning the

---

[6]Defendants argued before Judge Glasser in the Eastern District of New York that Finland was the most convenient forum for this case to be litigated and consented to the jurisdiction of Finland. [Doc. #63, Ex. J]. They have since joined in this motion. See n.1.

helicopter's design and manufacture are located in Connecticut and California, eyewitnesses to the accident and the helicopter wreckage are located in Estonia. The sources of evidence located in Finland specifically include: (1) Copterline's S-76 maintenance program, maintenance staff and maintenance records; (2) details of the helicopter's flight time and cycles; (3) a Finnish Border Patrol pilot who had discussions with Fredriksson several days before the accident[7]; (4) estate witnesses Pirkko Onverva Kopperi and Marika Kopperi-Gronlund; (5) Finnish CAA witnesses[8]; (6) witnesses and evidence relating to damages[9]; (7) Copterline witnesses[10]; (8) proximity to the accident scene; (9) proximity to the recovered helicopter wreckage in Estonia; (10) eyewitnesses to the descent of the helicopter during the crash[11]; (11) licensing, rating, flight and duty records, training and performance records of the helicopter pilots and crew; (12)

---

[7]See Pl. Let 4/6/09.

[8]Defendants identified four Finnish CAA witnesses. [Pl. Let. 4/6/09].

[9]Defendants identified five witnesses on damages located in Finland. [Pl. Let. 4/6/09].

[10]Defendants identified eleven witnesses from Copterline located in Finland. [Pl. Let. 4/6/09].

[11]Plaintiffs state that "[t]he Estonian witnesses to the crash of the Copterline helicopter into Tallinn Bay have nothing relevant to contribute regarding the upset condition (i.e. the uncommanded servo extension) that precipitated the accident." [Doc. #124 at 7].

helicopter log books.  Not only would this evidence likely have

to be brought to the District of Connecticut if the case were

adjudicated here, but it would also require translation into

English.[12]

Importantly, plaintiffs fail to consider the findings

contained in the Final Accident Report regarding Copterline's

maintenance of the accident helicopter.[13]  Access to maintenance

_____

[12]The parties agree that official translation costs will be
borne by the parties.  The language of court proceedings in
Finland is Finnish or Swedish. The Finnish Court will accept
documents in English without a translation into Finnish or
Swedish. [Heiskanen Aff. ¶16 at 7].

[13]The Final Report contains the following findings regarding
Copterline's maintenance of the accident helicopter.

- Inadequate maintenance and pre-flight practices hindered the
  discovery of the poorly performing main rotor forward
  actuator.
- The forward actuator had accumulated 2276 hours; in
  accordance with the manufacturer's maintenance manual and
  Copterline's approved maintenance programme, [sic] CA-HO-
  S76, a leakage test that had its due time at 2250 hours;
  there was no records that the leakage test had been
  performed, nor were there indications in Copterline
  documentation that such test was deferred or planned;
- the excessive leakage of the forward actuator could have
  been discovered if Sikorsky's maintenance manual had been
  followed;
- Copterline had not properly included the internal leakage
  test in its maintenance monitoring programme [sic];
- The hydraulic fluid was contaminated beyond acceptable
  levels; Copterline maintenance did not find the contaminated
  hydraulic fluid through routine maintenance practices;
- The actuator internal leakage test and cautious attention to
  hydraulic fluid patch test should have been sufficient to
  alert Copterline maintenance to the leaking forward
  actuator;
- Hydraulic filters had been fairly frequently changed; the
  Copterline maintenance documentation did not list any

18

records and staff is relevant to this case.  Since the accident,

Copterline Oy was sold and Copterline has undergone management

changes.  "A number of non-management employees, including

persons involved in the maintenance of the fleet, are no longer

employed by Copterline." [Doc. #132 at 9]. Finland provides

better access to this evidence, former Copterline employees and

these

witnesses.

Dr. Heiskanen explained that the Finnish Code of Judicial

Procedure does not provide for pre-trial discovery.  "However,

judges may, upon an individualized request by one party, order

another party to produce specific documents or types of documents

---

specific reasons; there was no evidence that the hydraulic
flushing procedure was performed;
- Copterline was not documenting its maintenance actions, as
  required in its approved maintenance management system (JAR
  OPS 3, Subpart M) and by its maintenance procedures (Part
  145);
- There were witness accounts of irregular events preceding
  the accidents (15 June, 26 July and approximately 6 August
  2005); there were evidence of Copterline maintenance actions
  and tests, but there were no maintenance documentation
  describing the actions taken, the test results or test
  protocols;
- There were indications of the absence of a company safety
  culture and a firm commitment to safety by Copterline
  management and many of its personnel; and
- there were indications that defect reporting was not
  encouraged by Copterline management, or at least was not to
  be documented in any official logbook.

[Final Rpt. §3.1.5]. More detailed findings are contained in the
sections, and the subsections contained therein, entitled
"Maintenance Intervention" at §2.4.6; "S-76 Maintenance" §2.8;
and "Events prior to the Accident" §2.10.

to the court." [Heiskanen Aff. at 7].  He also explained that written statements by fact witnesses, such as depositions and/or affidavits, are not permissible in the Finnish court. "Expert opinions, on the other hand, may be filed in writing." [Heiskanen Aff. at 8].

Plaintiffs argue that "[i]f this case is tried in Finland . . . far less evidence will be available to both sides than if the whole case is tried in Connecticut as Finnish Courts cannot compel testimony or production of documents from the Estonians." [Doc. #124 at 3].  Plaintiffs argue that they will not be able to compel non-party United States[14], Finnish and non-party Estonian witnesses if this case proceeds in Finland. Dr. Heiskanen offered no opinion regarding plaintiffs' ability to compel testimony of Estonian witnesses and/or the admission of Estonian documents and it was not addressed by defendants.  And neither defendants or plaintiffs' legal experts addressed this issue in their affidavits except to say that deposition testimony would not be admissible in the Finnish Courts.[15]

---

[14]Defendants noted that there is only one non-party United States witness currently identified by the parties. The parties agree that the NTSB representative would not be permitted to testify at trial in the United States or Finland.  Based on the proposed deposition witness lists to date, the majority of non-party witnesses identified are located in Finland and Estonia.

[15]Plaintiffs' legal expert Dr. Koulu opined that "access to evidence is far better in the United States of America than in Finland. There is no discovery institution in Finnish law. In addition, a Finnish court does not have the power to make the

Thus, while bringing suit in Connecticut affords the plaintiffs substantial convenience in the accessibility of evidence relating to Sikorsky, HSI, HRT and PTI and the involvement of Sikorsky, HSI and HRT and the NTSB in the accident investigation, it affords them substantial inconvenience in the inaccessibility of evidence relating to the primary investigation of the accident, as well as evidence relating to the events leading up to the accident and evidence of the accident itself. Indeed, defendants' proposed deposition witness list contains twenty-five witnesses from Finland, six witnesses in the United Kingdom and two witnesses in Estonia, while plaintiffs seek to depose fifteen witnesses in Connecticut, three witnesses in Texas, one witness in Washington, D.C. and one witness in Estonia.  Defendants have stipulated that they will make available to the Finnish courts any witnesses or documents in their possession, custody, or control that the Finnish court may deem relevant.

Consequently, the Court cannot find, at this point in the analysis, that the District of Connecticut is more convenient to the plaintiffs than their home forum.  This weighs against deference to their choice of forum.

---

United States-based defendants present any documents, more specifically this kind of decision could not be enforced. Neither can the Finnish court bindingly obligate people in the United States of America to come to Finland to testify in a Finnish trial." [Koulu Aff. at ¶24.].

c) <u>Availability of Witnesses in the Forum</u>

The third factor the court considers in the first step is the availability of witnesses.  As has just been discussed, relevant witnesses in this case are located in the United States, Finland, Estonia, and the United Kingdom.  While the U.S. witnesses are relatively available in the District of Connecticut, defendants stipulate that they will make their witnesses and/or documents in their possession, custody, or control available to the Finnish courts. [Doc. #63 Ex. J].

Thus, the Court cannot conclude that witnesses relevant to this dispute are more available in the District of Connecticut than they are in the plaintiffs' home forum, which argues against deference to the plaintiffs' choice to bring suit in the District of Connecticut.

d)   <u>Defendants' Amenability to Suit</u>

The fourth factor the court considers is the defendants' amenability to suit in the plaintiff's chosen forum.  Sikorsky and HSI have their principal places of business in Connecticut, and PTI has a plant located in Connecticut.  Clearly, they are amenable to suit in the District of Connecticut, which argues in favor of deference to the plaintiffs' choice of forum.[16]  <u>See</u>

_____

[16]The fact that the defendants support their <u>forum non conveniens</u> motions with a representation that they will submit to jurisdiction in Finland is certainly relevant at the second and third steps of the <u>forum non conveniens</u> analysis, but it does not alter the fact that the plaintiffs' choice of a Connecticut forum

Norex Petroleum, Ltd. v. Access Indus., 416 F.3d 146, 155 (2d
Cir. 2005) (plaintiff's decision to litigate where all defendants
were amenable to suit is properly viewed as a strong indicator
that convenience, and not tactical harassment of an adversary,
informed its decision to sue outside its home forum).  Although a
plaintiff's choice of a defendant's home forum does not, by
itself, support a presumption of convenience, substantial
deference may still be appropriate when that choice is made to
obtain jurisdiction over a defendant. See id. at 154.  But such
deference is not automatically given.  See In re Air Crash near
Peixoto De Azeveda, 574 F. Supp. 2d 272, 281 (E.D.N.Y. 2008).  A
plaintiff's "choice of the defendant's home forum provides a much
less reliable proxy for convenience," than plaintiff's choice of
his own home forum.  Pollux Holding, Ltd. v. Chase Manhattan
Bank, 329 F.3d 64, 73 (2d Cir. 2003). "Accordingly, a plaintiff's
choice to initiate suit in the defendant's home forum" as opposed
to any other [forum] where the defendant is also amenable to suit
"only merits heightened deference to the extent that the
plaintiff and the case possess bona fide connections to, and
conveniens factors favor, that forum." Id. at 74. In the present
action, while the case has some connection to the United States
(the plaintiffs allege that defendants "designed and manufactured

---

rather than their own home forum was motivated, in part, by this
genuine jurisdictional convenience.  See Norex Petroleum, Ltd. v.
Access Indus., 416 F.3d 146, 156 (2d Cir. 2005).

a defective component" in Connecticut and California), the plaintiffs do not.  Further, as discussed below, the convenience factors weigh heavily in favor of the Finnish forum. Accordingly, the Court cannot conclude that the plaintiffs' choice of forum is entitled to greater deference based solely on the fact that the plaintiffs initiated the current action in the defendants' home forum.

     e)  <u>Availability of Legal Assistance</u>

The fifth factor the court considers is the availability of appropriate legal assistance.  Appropriate legal assistance is available in both the District of Connecticut and Finland. Neither party has shown any disadvantage in receiving appropriate legal assistance in either forum.

     f)  <u>Evidence of Forum Shopping</u>

The sixth and final factor the court considers is any evidence of forum shopping to be subject to favorable law, the habitual generosity of juries in the United States, or the plaintiff's popularity or the defendant's unpopularity in the region.  Despite both defendants' and plaintiffs' explicit and implicit accusations of forum-shopping and reverse forum-shopping, the court does not find that either the plaintiffs or the defendants were, or now are, motivated solely by improper

motives.[17]

That said, however, this Court is bound by the Second Circuit's instruction that, "when [a] foreign plaintiff chooses a United States forum, a plausible likelihood exists that the selection was made for forum-shopping reasons, such as the perception that United States courts award higher damages than are common in other countries." Norex Petroleum, Ltd., 416 F.3d at 155. Consequently, this Court recognizes that the plaintiffs likely have a pecuniary interest in having this dispute adjudicated in the United States, and this interest was likely a factor in their decision to bring suit in the United States.

Based on a review of the factors discussed in this section, it is the Court's opinion that the plaintiffs choice to bring their suits in the District of Connecticut is entitled to some deference.  While this deference is important, it is less

---

[17] As one court in this circuit observed, "[i]n applying the Iragorri factors, [a district court] cannot be blind to the practical realities of cross-border litigation. The often pejorative connotation inherent in the label 'forum shopping' is generally undeserved. It is a fact that plaintiffs will almost always select a forum in which they believe they will maximize their recovery, as long as they have a reasonable chance of remaining in that forum, and that forum is often within the U.S. Conversely, defendants will generally seek to relegate actions to the forum in which they believe their exposure is minimized, and that forum is often outside of the U.S.  Assuming the requirements of Federal Rule of Civil Procedure 11 are met . . . there is nothing immoral or unsavory about plaintiffs making such choices or defendants seeking to undo them." In re Air Crash near Peixoto De Azeveda, 574 F. Supp. 2d 272, 279 (E.D.N.Y. 2008).

deference than plaintiffs would have been given if they were not foreign plaintiffs.  See Overseas Media, Inc. v. Skvortsov, 277 Fed. Appx. 92, 97 (2d Cir. 2008) ("There was no abuse of discretion in the District Court's conclusion that plaintiffs' choice of forum was entitled to some deference, but less deference than if they were not foreign plaintiffs").  Yet, even where the degree of deference is reduced, an "action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable." Iragorri, 274 F.3d at 74-75.  With this in mind, and with the scales recalibrated to account for reduced deference to the plaintiffs' choice of forum, the Court turns to the second and third steps of the forum non conveniens analysis.  See Norex Petroleum, Ltd., 416 F.3d at 157 (the court's determination of the level of deference to accord a plaintiff's choice of forum "recalibrate[s] the balance for purposes of the remaining analysis").

        2.   Is Finland an Adequate Alternative Forum?

     "To secure dismissal of an action on grounds of forum non conveniens, a movant must demonstrate the availability of an adequate alternative forum."  Norex Petroleum Ltd. v. Access Indus. Inc., 416 F.3d 146, 157 (2d Cir. 2005) (citations omitted).

"An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." Id. (citing Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 75 (2d Cir. 2003) (citing Piper Aircraft, 454 U.S. at 254 n.22; Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC, 155 F.3d 603, 609 (2d Cir. 1998)).

The courts in Finland are capable of affording substantial justice to the parties.  Finland is a Civil Law country, with an independent judiciary. [Heiskanen Aff. ¶¶8-9].  Finland has been a Member State of the European Union since 1995, and the law of the European Union is part of the Finnish legal system. [Heiskanen Aff. ¶10]. Private and criminal law matters are subject to the jurisdiction of the general courts. [Heiskanen Aff. ¶12].  Cases are heard by a District Court, subject to appeal before a Court of Appeal and leave of appeal before the Finnish Supreme Court. [Heiskanen Aff. ¶13]. The District Court sits in panels of one or three professional judges.  A single judge presides over the pre-trial procedure.[18] [Heiskanen Aff. ¶19]. Judges have unrestricted competence to evaluate the evidence put before them and are independent from any other

---

[18]"In criminal cases and in certain family law disputes, District Court panels include lay members in addition to professional judges.  No lay members are among the judges dealing with claims for damages based on tort." [Heiskanen Aff. ¶19].

organs or authorities. [Heiskanen Aff. ¶15]. Civil court procedure is governed by the Code of Judicial Procedure, supplemented by statutes concerning, e.g., the organization and specific procedures applied in special courts, preliminary investigations and coercive measures; the status, rights and obligations of prosecutors and attorneys; legal aid, cost-free legal proceedings, and other matters.  [Heiskanen Aff. ¶14].  The Finnish Code of Judicial Procedure does not provide for pre-trial discovery. However, judges may, upon an individualized request by one party, order another party to produce specific documents or types of documents to the court. [Heiskanen Aff. ¶16]. Cases are divided into a pre-trial phase and then a trial phase in the District Court.  The pre-trial phase involves exchanges of written pleadings and a preparatory hearing.  The pleadings consist of a statement of claim, the defendant's written response and any further written submissions the court may deem appropriate and necessary.   The preparatory hearing serves to define the exact claims, their grounds, and the evidence that will be presented at the main hearing.  A dispute may be resolved in the course of the pre-trial phase.  During the main hearing, the parties present their claims, witnesses are examined and cross-examined, and the parties make their closing statements. [Heiskanen Aff. ¶17]. Written statements by fact witnesses are not permissible in court.  Expert opinions, on the other hand,

28

may be filed in writing.  [Heiskanen Aff. ¶16]. All parties are
bound to be truthful throughout the proceedings. [Heiskanen Aff.
¶15]. The subsequent judgment has to state the reasons for the
decision reached.  [Heiskanen Aff. ¶17].

Dr. Heiskanen, defendants' legal expert, opined that
plaintiffs are able to commence a civil action against defendants
in Finland. "Finnish Courts would have jurisdiction because (1)
the defendants consent to jurisdiction in Finland; (2) the
consequences of the accident were felt in Finland; (3) the
defendants agree to waive any statute of limitations defense;[19]

---

[19]Defendants have stipulated they will consent to the
jurisdiction of the Finnish Courts if this case is dismissed on
forum non conveniens grounds.  The parties' experts seem to agree
that the Finnish Court would accept an agreement to jurisdiction.
"[I]f foreign corporations such as the Defendants submit and
consent to the jurisdiction of the courts of Finland, either by
express agreement or by appearing before a Finnish court and
addressing the merits of the case, without challenging
jurisdiction, Finnish courts would have jurisdiction over them."
[Heiskanen Aff. at 11-12].  Plaintiff's expert Dr. Koulu did not
dispute this statement of the law, stating an agreement is
"basically binding." [Koulu Aff. ¶18]. Dr. Koulu states, "if
parties are allowed [sic] agree upon the jurisdiction, or make a
prorogation agreement, the question of jurisdiction is examined
only if a party makes a claim or does not appear in court . . .
." [Koulu ¶17]. He opined that "[a] fraudulent party could
obstruct the trial several times by giving promises and
retracting them, thus deprive the plaintiff of access to
justice." [Koulu Aff. ¶¶8, 18].  However, Dr. Koulu does not
suggest any basis for the Court to believe that defendants'
stipulation is untrustworthy or fraudulently presented. Here,
defendants have also stipulated and agreed to any conditions set
by the Court. The Court will condition dismissal on, among other
things, the defendants' agreement to pay any judgment awarded by
the Finnish Courts and will not prevent plaintiffs from returning
to this Court if the Finnish courts decline to accept
jurisdiction of this action.

(4) plaintiff may bring claims based on general torts law as well as specific provisions of the Finnish Product Liability law;[20] (5) for purposes of the Finnish Product Liability Act, it is relevant that plaintiffs are Finnish citizens and are domiciled in Finland; (6) provided plaintiffs establish liability, they may recovery compensatory damages and interest on the damages awarded and at least a portion, if not all, legal costs.[21] [Heiskanen Aff. at 10-11; 19-20].

The courts of Finland are capable of providing fair and substantial justice to the parties in this litigation.  Under Finnish law, actions may be brought against manufacturers for harm caused by defective products under the Finnish Product

---

[20]"Claims based on the Finnish Product Liability Act may also be brought before the court of the domicile of the plaintiff."  "The application of the rule would likely require that the damage occurred in Finland, which is the case here." [Heiskanen Aff. at 16].

[21]The Finnish Tort Liability Act provides for "only compensatory damages" and "possible damages" may be awarded to the heirs of the deceased in cases where the death was caused "deliberately or by a grossly negligent act." [Heiskanen Aff. At 17].  "In addition, under Finnish law, a successful plaintiff is also entitled to interest on the damages awarded." [Heiskanen Aff. at 18].  "[T]he losing party in civil proceedings bears all reasonable legal costs of the winning party.  However, judges have discretion to derogate from this rule if it would be manifestly unreasonable to hold one party liable for the other party's legal costs, bearing in mind the circumstances giving rise to the proceedings, the situation of the parties, and the significance of the dispute." [Heiskanen Aff. at 18].  Neither punitive damages nor "survival damages to plaintiff's decedents for conscious pre-death pain and suffering are recoverable under Finnish law."  [Heiskanen Aff. at 18].

Liability Act and Finland has a remedy for wrongful death claims under the Finnish Tort Liability Act.  Compensatory damages and funeral expenses are available and maintenance/child support damages may be awarded; in addition, the heirs of the deceased whose death has been caused deliberately or by a grossly negligent act may recover damages "for the anguish arising from the death." [Heiskanen Aff. ¶¶26-28; 43-44].  A successful plaintiff is also entitled to interest on the damages awarded and a losing party in civil proceedings bear all reasonable legal costs of the winning party.  [Heiskanen Aff. ¶¶45-46].  In Finland, neither punitive damages nor survival damages are recoverable under Finnish law.  [Heiskanen Aff. ¶47]. It is well-established that "'[t]he availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum,' nor on identical remedies.'  Norex Petroleum Ltd., 416 F.3d at 158 (quoting PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 74 (2d Cir. 1998).  "An adequate forum need not be a perfect forum."  Satz v. McDonnell Douglas Corp., 244 F.3d 1279, 1283 (11th Cir. 2001); Acosta v. JP Morgan Chase & Co., No. 05 Civ. 977(NRB), 2006 WL 229196, at *7 (S.D.N.Y.  Jan. 30, 2006) (an alternative forum "need not be perfect to be adequate.").  In Piper Aircraft v. Reyno, the Supreme Court held that only where the remedy offered by the other forum is clearly unsatisfactory should a Court begin

to question whether the alternative forum is inadequate.  454
U.S. at 254-55. The Supreme Court noted that a remedy is
inadequate when it amounts to "no remedy at all." Id. 454 U.S. at
254. Although punitive damages and survival damages may not be
available in Finland, there is no danger that plaintiffs will be
"deprived of any remedy or treated unfairly."  Id. 454 U.S. at
255.

Finnish Courts have territorial jurisdiction over all torts
that have been committed in Finland and, under certain
conditions, torts that occur outside Finland. [Heiskanen Aff. ¶
32].  Dr. Heiskanen opined that the Finnish Courts would have
jurisdiction to hear and decide the tort claims at issue in this
case. [Heiskanen Aff. ¶39].  The general limitations period under
Finnish law is three years, pursuant to the Act on Limitation of
Debts. [Heiskanen Aff. ¶49].

Regarding a statute of limitations defense, Dr. Heiskanen
stated that under Finnish law, "[t]he statute of limitations may
be invoked by the defendant; judges cannot apply it at their own
initiative. Defendants cannot waive their right to invoke the
statute of limitations in advance, but they can choose not to
invoke it after the limitations period has expired." [Heiskanen
Aff. at 19 (emphasis added)].  Here, defendants have stipulated
to tolling the statute of limitations.

Moreover, Finland is an adequate forum in view of the

32

defendants' stipulation to the jurisdiction of its courts.  See Piper Aircraft, 454 U.S. at 255 n.22 ("Ordinarily, [the availability] requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." (quoting Gulf Oil Corp., 330 U.S. at 506-07 (1947));  DiRienzo v. Philip Servs. Corp., 232 F.3d 49, 57 (2d Cir. 2000) ("[A]n agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy th[e] [alternative forum] requirement.") (citation omitted), vacated on other grounds, 294 F.3d 21 (2d Cir. 2002); Melton v. Oy Nautor AB, 161 F.3d 13, 1998 WL 613798, *1  (9th Cir. Sept. 4, 1998) ("In this case, [the parties] are subject to, or have submitted to, jurisdiction in Finland. An adequate alternative forum exists.").

Here, defendants stipulate to jurisdiction before the Finnish courts. The defendants agree to make all relevant evidence and witnesses under their control available in Finland. Further, the defendants agree to pay any judgment imposed by the Finnish Courts and stipulate that, should Finland refuse to exercise jurisdiction, plaintiffs may move in this Court to reopen this action.  See In re Air Crash Near Peixoto de Azeveda, Brazil, 574 F. Supp. 2d 272, 290 (E.D.N.Y. 2008) (listing conditions set by the court).

33

3.   Private and Public Interest Factors

In the third and final stage of the forum non conveniens calculus, courts consider a number of private and public factors that influence the relative convenience of the fora in question. See Gulf Oil Corp., 330 U.S. 501, 508-09 (1947).  Private interests to the litigants include:

> (1) The relative ease of access to sources of proof; (2) availability of compulsory process [to compel] attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) the possibility of [a] view of premises, if [a] view would be appropriate to the action; (4) the enforcibility of a judgment if one is obtained; and (5) all other practical problems that make trial of a case easy, expeditious and inexpensive.

BFI Group Divino Corp. v. JSC Russian Aluminum, 298 Fed. Appx. 87, 2008 WL 4810779, *4 (2d Cir. Nov. 4, 2008) (quoting Gulf Oil Corp, 330 U.S. 501, 508-09 (1947)).  The public interests the court considers include:

> (1) Administrative difficulties inherent in bringing a case in a congested docket; (2) imposing jury duty on citizens who have no relation to the litigation; (3) holding the trial in the view and reach of the citizens whom the trial might affect; (4) local interest in having localized controversies decided at home; and (5) avoiding requiring that a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

Id. (quoting Gulf Oil Corp, 330 U.S. 501, 508-09 (1947)).

a.   Private Factors

Relative Ease of Access to Sources of Proof and Residence of the Parties and Witnesses and Availability of Compulsory Process and Other Sources of Proof

In weighing the relative ease of access to sources of proof

34

in this dispute, as well as the availability of compulsory processes to compel attendance of unwilling, and the cost of obtaining attendance of willing, witnesses, the court begins by noting that the defendants have offered, as a condition of dismissal, to make all relevant evidence and witnesses under their control available to the plaintiffs in Finland  See Doc. #63 Ex. J.  The court also notes that the defendants have already produced thousands of pages related to the S-76 main rotor forward actuator, servo, and the helicopter's instructions, manuals, and warnings, and further that these documents were produced on disc which can be transported to Finland quite easily.[22]  Because the plaintiffs primarily seek evidence and witnesses concerning defendants' design and manufacture of the helicopter and its component parts and plasma coating, the Court finds that this production and the defendants' stipulation adequately address platinffs' concerns.

Based on findings contained in the Final Accident Report, defendants may assert that negligence on the part of Copterline and its maintenance staff is the actual and proximate cause of the accident. [Doc. #126 §3.1.5].  They have a good faith basis to do so. The official accident report prepared by the Estonian Accident Investigation Commission notes that, "the Copterline flight operations, maintenance management system, maintenance

---

[22]At oral argument, counsel stated that some documents are available on a secure web site created for this litigation.

organization and approved maintenance program were well
documented and clear: however, the actual practices and performed
processes showed deficiencies and deviations from the
requirements and approved documented procedures." Id.; see infra
n.13.

The presence of these issues is significant. Evidence
concerning maintenance and repair of the helicopter is in
Finland.  The helicopter operator, its former employees, and
maintenance staff are in Finland, as are all of the surviving
family members, many liability witnesses and every single damages
witness, party or non-party. Evidence relating to the scene of
the accident, the surrounding circumstances, the cause of the
accident and the official investigation is in nearby Estonia.
Defendants contend that "[t]he fact that some witnesses and
documentary evidence may be located outside Finland-in Estonia,
the United Kingdom, and France-does not change this analysis.
These nations all are members of the European Union and the ease
of access among them is greater than that available to litigants
in this Court." [Doc. #63 at 17].  This weighs in favor of
adjudication in Finland.


Ability to View the Accident Scene
Regarding the possibility of viewing the accident scene,
while it is unlikely that a view of the crash site will be

necessary in adjudicating this action, it may be necessary for
the trier of fact to view the wreckage of the helicopter, which
is located in Estonia.  This weighs in favor of adjudication in
Finland.

<u>Enforcibility of Judgment</u>

The Court also considers the enforcibility of a judgment if
one is obtained.  Because the defendants have agreed, as a
condition of dismissal here, to pay any final, post-appeal
judgment against them by a Finnish court, the District of
Connecticut is no more convenient than Finland in this regard.
This factor is neutral.

<u>Weighing Convenience and Expense of Trial and Other
Practical Problems</u>

Finally, regarding the practical problems in this dispute,
the Court finds that these considerations weigh in favor of
adjudicating this case in Finland.  Most importantly, Copterline
and its maintenance staff, some of whom are no longer employed by
Copterline, are not subject to personal jurisdiction in this
forum, and therefore defendants will be unable to join these
entities in defending the suit if the action remains here. And
virtually all of the non-party factual witnesses on liability and
damages are located in Estonia or Finland, beyond the compulsory
process of this Court.

In contrast, the defendants have unequivocally consented to

jurisdiction in Finland.  This difference in jurisdiction over potentially liable entities weighs strongly in favor of dismissal.  See, e.g., Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981) (holding that dismissal was proper because it would be unfair to make the defendants proceed to trial in the U.S. when witnesses were beyond the reach of the compulsory process, and defendants would be unable to implead potential foreign third-party defendants); Allstate Life Ins. Co. v. Linter Group Ltd., 994 F.2d 996, 1001-02 (2d Cir. 1993) (noting that witness unavailability is a factor favoring dismissal, litigation in the U.S. without all of the interested parties "creates a risk of inconsistent judgments"); Crosstown Songs U.K. Ltd. v. Spirit Music Group, Inc., 513 F. Supp. 2d 13, 17 (S.D.N.Y. 2007) (holding that, "[i]t would be unfair to require [defendant] to litigate here without the opportunity to bring in parties and witnesses who are critical to its setoff defense").

In weighing convenience and expense of trial and other practical problems, the court considers the relative costs of litigating this suit in Finland and the United States.  None of the parties has offered any evidence or argument concerning the costs of counsel.  They focus instead on costs related to the document translation.  "Virtually all relevant documents-accident investigation reports, flight logs, and other records relating to the aircraft and its crew, as well as regulatory oversight

documents (e.g. licensing, supervision, and auditing of Copterline's operations) - will have been originally drafted in Finnish or Estonian and will need to be officially translated into English, at considerable expense." [Doc. #63 at 20]. However, as the Court has previously noted, the defendants have produced thousands of pages of documents on a compact disc, which can be transported quite easily. If the litigation proceeds in Finland, only a small percentage of liability documents, and virtually no damages documents, will require translation.  While written and oral proceedings in Finland are presented in Finnish or Swedish, a judge may accept English language documents without translation. [Heiskanen Aff. ¶16].  Moreover, Finnish, Swedish and Estonian are Finno-Urgic languages and closely related.  As a result, the cost factor argues in favor of adjudicating this dispute in Finland.

In sum, all of the private interest factors the Court considered are either neutral or weigh in favor of resolving the dispute in Finland.

b.  <u>Public Factors</u>

<u>Administrative Difficulties and Burden on the Community</u>

Concerning the administrative difficulties of this case, the parties' arguments focus on the administrative difficulties of dealing with translations, as well as the burden and costs associated with a complicated, highly

39

technical, and likely lengthy trial.

As the Court has already noted, regardless of the forum, the court that eventually adjudicates this case will be dealing with documents in translation.  The parties, not the court, will provide these translations and incur the costs.  Thus, the administrative difficulties pertaining to translations are essentially equivalent in both fora.

Plaintiffs argue that it would be most efficient to try the Copterline and Kopperi cases at the same time as the three cases share "common issues of accident causation and liability against the same four defendants . . . ." [Doc. #169 at 36].  However, since the argument on these motions, Copterline has been settled.

As for the next public interest factor, defendants argue that because "[t]his accident occurred outside the territorial waters of the United States, . . . the Death on the High Seas Act ("DOSHA"), 46 U.S.C. §30101, et seq. likely governs plaintiffs' claims" and "there is no right to a jury trial under DOSHA." [Doc. #63 at 22].  In response, plaintiffs argue that "if one assumes that [defendants'] "no jury trial" position is correct (a point that plaintiffs do not concede), then it follows that the trial of plaintiffs' claims in this Court will not impose any jury duty obligation on citizens of this District." [Doc. #124 at 37].

The Court addresses the application of DOSHA below.

Interest in Resolving Local Disputes Locally

The Court next considers the public interest factors of holding the trial in the view and reach of the citizens whom the trial might affect, and the local interest in having localized controversies decided at home.  Plaintiffs argue that Connecticut courts "have a compelling interest in ascertaining whether companies that do business in this District engaged in the negligent design, manufacture and/or overhaul of a defective servo that caused the death of everyone on board (including two Americans) at the time of the crash." [Doc. #124 at 38].  The defendants, on the other hand, contend that Finland has a significant and compelling local interest in having this litigation result not only in full and fair compensation to the families of its citizens who died in the crash, but also of having all parties who are potentially at fault participate in the suit and be held accountable.[23] [Doc. #63 at 23].  The Court agrees.

As has been noted throughout this ruling, at the time of the crash, Copterline, a Finnish corporation, was

_____

[23] Specifically, defendants point to the fact that: (1) Copterline is a Finnish air carrier that does not fly in the United States; (2) Plaintiffs all reside in Finland, as did their decedents; (3) The aircraft wreckage is in neighboring Estonia, where the accident investigation is based; (4) Copterline is subject to Finnish, Estonian and European regulations promulgated and administered by the governing Civil Aviation Authority (the equivalent of the FAA in this country). [Doc. #63 at 23].

operating the helicopter at issue.  All the plaintiffs are
Finnish citizens.  Estonia, and not Finland or the United
States, is handling the primary investigation of the
accident.  Contrary to the plaintiffs' arguments, the
primary purpose of this litigation is not to determine the
general safety of the Sikorsky S-76C+, but rather to
determine whether the defendants are liable for the injuries
resulting from the August 10, 2005, crash in Tallinn Bay, in
the territorial waters of Estonia.  Thus, it is the Court's
conclusion that Finland has the deeper interest in holding
the trial in the view and reach of its citizens, a factor
that weighs heavily in favor of dismissal.[24]


        Applicability of Foreign Law

     The final public interest factor the Court considers is
the extent to which this Court can avoid problems in
conflict of laws and the application of foreign law.  To
this end, the Supreme Court has counseled that:

        The doctrine of forum non conveniens . . . is designed in
        part to help courts avoid conducting complex exercises in
        comparative law.  As we stated in Gilbert, the public
        interest factors point towards dismissal where the court
        would be required to 'untangle problems in conflict of
        laws, and in law foreign to itself.'

_____

     [24]It is also noted that at the time of this writing, the
Prosecutor General of the Republic of Estonia has initiated a
criminal investigation into the cause of the accident, another
factor that weighs in favor of dismissal.

                              42

<u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 251 (1981) (quoting <u>Gilbert</u>, 330 U.S. at 509).  However, "the need to apply foreign law is not in itself a reason to apply the doctrine of <u>forum non conveniens</u>," and courts "must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform."  <u>Manu Int'l, S.A. v. Avon Prods., Inc.</u>, 641 F.2d 62, 67-68 (2d Cir. 1981) (internal quotation and citation omitted).

In order to determine the applicable substantive law, the court must look to the proper choice of law rules.  In this case, however, it is not immediately clear which choice of law rules apply.  Typically, "[a] federal court sitting in diversity applies the choice of law rules of the forum state," in this case, Connecticut.  <u>Maryland Casualty Co. v Continental Casualty Co.</u>, 332 F.3d 145, 151 (2d Cir. 2003) (citing <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941)).  Here, defendants ask the Court to apply the federal admiralty choice of law rules, arguing that plaintiffs' law claims are preempted by the Death on the High Seas Act ("DOSHA"), 46 U.S.C. §30301, <u>et seq.</u>.[25]  The Court agrees.

―――――――――――

[25]Plaintiffs did not provide choice of law analysis. Rather, they argued that "Connecticut is by far the more convenient forum, as American law-either federal or Connecticut-will apply to plaintiffs' claims, whether they are based on federal maritime law, Connecticut law based on diversity of citizenship of the parties (including Connecticut product liability law), or DOSHA." [Doc. #169 at 39].  Defendants, on the other hand, state that DOSHA "appears to afford plaintiff's their exclusive remedy . . .

43

Under the DOHSA, "[w]hen the death of an individual is
caused by wrongful act, neglect, or default occurring on the high
seas beyond three nautical miles from the shore of the United
States, the personal representative of the decedent may bring a
civil action in admiralty against the person or vessel
responsible." 46 U.S.C. §30302. DOHSA clearly applies in the
present case because plaintiffs' decedents died on the high seas
in Tallinn Bay, in the territorial waters of Estonia, well beyond
three nautical miles from the shores of the United States. See
Jennings v. Boeing Co., 660 F. Supp. 796, 802 (E.D. Pa. 1987),
aff'd, 838 F.2d 1206 (3d Cir. 1988) (holding that DOHSA properly
applies to accidents occurring within foreign territorial
waters); Offshore Logistics v. Tallentire, 477 U.S. 207, 219
(1986) (applying DOHSA to a helicopter crash on the high seas
finding, "[a]lthough the decedents were killed while riding in a
helicopter and not a more traditional maritime conveyance, that
helicopter was engaged in a function traditionally performed by
waterborne vessels . . . ."). Further, courts have held that the
DOHSA applies "where the decedent is injured on the high seas,
even if a party's negligence is entirely land-based and begins
subsequent to that injury." Motts v. M/V Green Wave, 210 F.3d
565, 567 (5th Cir. 2000) (finding delay in medical treatment of
injury sustained at sea was the proximate cause of death) (citing

---

." 46 U.S.C. §30302. [Doc. #63 at 24].

44

cases).

The DOHSA "preempts all wrongful death actions under state law where it applies." Id. at 569 (citation omitted).  Further, the Supreme Court has held that "DOHSA expresses Congress' judgment that there should be no [survival] cause of action in cases of death on the high seas.  By authorizing only certain surviving relatives to recover damages, and by limiting damages to the pecuniary losses sustained by those relatives, Congress provided the exclusive recovery for deaths that occur on the high seas." Dooley v. Korean Air Lines Co., 524 U.S. 116, 123 (1998). As a result, any recovery to which plaintiffs would be entitled based on Connecticut state law are preempted by the DOHSA.  See Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 218-19 (1986) (finding DOSHA is the exclusive remedy for wrongful death actions for maritime deaths occurring on the high seas).

The fact that plaintiffs invoked the court's diversity jurisdiction rather than its admiralty jurisdiction does not mean that the court is barred from exercising its admiralty powers.[26]

_____

[26] In this case, the DOHSA expressly provides for admiralty jurisdiction because the accidental deaths occurred beyond three nautical miles from the shores of the United States.  See 46 U.S.C. §30302.  Even without this statutory provision, however, admiralty jurisdiction is appropriately invoked here under traditional principles because "the accident occurred on the high seas and in furtherance of an activity bearing a significant relationship to a traditional maritime activity." Offshore Logistics v. Tallentire, 477 U.S. 207, 219 (1986) (holding that, "[a]lthough the decedents were killed while riding in a helicopter and not a more traditional maritime conveyance, [admiralty jurisdiction was appropriate because] that helicopter

45

See, e.g., Preston v. Frantz, 11 F.3d 357, 358 (2d Cir. 1993) (instructing that, "[w]hen . . . plaintiffs bring a suit based upon diversity jurisdiction, we nevertheless apply substantive federal maritime law if we have admiralty jurisdiction"); Capozziello v. Brasileiro, 443 F.2d 1155, 1157 (2d Cir. 1971) (holding "[t]hat the district court's diversity, rather than its admiralty, has been invoked does not change the applicable [maritime] law").  Thus, the court applies the federal admiralty choice of law analysis in determining the law applicable to this case.[27]  See State Trading Corp. v. Assuranceforeningen Skuld, 921 F.2d 409, 414 (2d Cir. 1990) (citing cases) ("A federal court sitting in admiralty must apply federal choice of law rules").

Plaintiffs argue that "there are no circumstances under which Finnish law will apply to this case." [Doc. #124 at 38-39]. However, in order for plaintiffs to take this position they must overlook the findings contained in the Final Accident Report,

---

was engaged in a function traditionally performed by waterborne vessels: the ferrying of passengers from an island . . . to the shore" (internal quotation omitted)); Preston v. Frantz, 11 F.3d 357, 358 (2d Cir. 1993) (holding that admiralty jurisdiction was appropriate in a case in which a helicopter crashed while en route from Connecticut to Nantucket Island, Massachusetts).

[27]It is of no matter that "decedents were killed while riding in a helicopter and not a more traditional maritime conveyance, that helicopter was engaged in a function traditionally performed by waterborne vessels: the ferrying of passengers . . . to the shore." Offshore Logistics, Inc., 477 U.S. 207, 219 (1986) (citing Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 271 n.20).

"Maintenance Intervention" at §2.4.6; "S-76 Maintenance" at §2.8; "Events prior to the Accident" at §2.10.  and "Operator (Copterline)," at §3.1.5 , addressing Copterline's maintenance of the accident helicopter. [Doc. #126].  On this record, the Court can foresee circumstances where Finnish law would apply.

    Federal Choice of Law Analysis

    In resolving conflict of laws questions in maritime tort cases, the Supreme Court has adopted an interest analysis that looks to a number of factors, including: (1) the place of the wrongful act; (2) the law of the vessel's flag; (3) the domicile of the injured party; (4) the domicile of the vessel owner; (5) the place of the contract; (6) the inaccessibility of the foreign forum; (7) the law of the forum, and (8) the vessel owner's base of operations.[28]  See Carbotrade S.p.A. v. Bureau Veritas, 99 F.3d 86, 90 (2d Cir. 1996) (citing Hellenic Lines, Ltd. v. Rhoditis, 398 U.S. 306, 308 (1970); Lauritzen v. Larsen, 345 U.S. 571, 582 (1953); Romero v. International Terminal Operating Co., 358 U.S. 354, 359 (1959)).

    To begin, it is important to note that certain Lauritzen factors do not apply in this case.  First, in contrast to Lauritzen, no direct contractual relationship exists between the plaintiffs and the defendants in this case, so the fifth factor,

_____

    [28]Courts frequently refer to these as the "Lauritzen" factors, after the Supreme Court case in which the bulk of the factors were first set out.  See Lauritzen v. Larsen, 345 U.S. 571, 582 (1953).

"the place of the contract," is not involved in the court's analysis.  See Carbotrade S.p.A. v. Bureau Veritas, 99 F.3d 86, 90 (2d Cir. 1996).  Further, the Second Circuit considers the seventh Lauritzen factor, "the law of the forum," to be "generally of little relevance in United States courts." Rationis Enterprises Inc. of Panama v. Hyundai Mipo Dockyard Co., 426 F.3d 580, 587 (2d Cir. 2005) (citing Carbotrade, 99 F.3d at 91) ("The seventh Lauritzen factor - the law of the forum - is irrelevant here because this litigation is in the courts of the United States").  Thus, this court considers only six of the eight Lauritzen factors.

     First, the place of the alleged wrongful act is not straight forward.  Our Court of Appeals holds that the place of the alleged wrongful act is where the negligence occurred.  Rationis Enterprises Inc. of Panama, 426 F.3d at 587 (citing Carbotrade, 99 F.3d at 91) (holding "that the place of the wrongful act is not where the vessel sinks, but where the negligence occurs.").  Based on this record, the place of the negligent design and/or manufacture of the helicopter or its component parts, is Connecticut or, alternatively, the place of the negligent maintenance of the helicopter is Finland.  Second, the law of the helicopter's flag is Finnish.  The helicopter was owned and operated by Copterline Oy, a Finnish corporation, and registered

48

in Finland.[29]   Third, the domicile of all the plaintiffs is
Finland.   Fourth, the domicile of the helicopter's owner is
Finland.   Fifth, the foreign forum, i.e., Finland, is not
inaccessible to the plaintiffs.   As previously discussed,
plaintiffs are Finnish citizens and defendants have agreed to
submit to jurisdiction in the courts of Finland.   Sixth, the
helicopter's base of operations is Finland.   Thus, the Lauritzen
factors appear to indicate that, were this court to adjudicate
the dispute, it would apply the law of Finland.   "While the Court
need not definitively resolve the choice of law issue at this
point, the likelihood that foreign law will apply weighs against
retention of the action."   Ioannides v. Marika Maritime Corp.,
928 F. Supp. 374, 379 (S.D.N.Y. 1996).

    All of the public interest factors the Court considered,
"(1) the administrative difficulties; (2) holding the trial in
the view and reach of the citizens whom the trial might affect;
(3) local interest in having localized controversies decided at

---

[29]In Lauritzen, the Supreme Court placed special emphasis on
the law of the flag, noting that the law of the flag "must
prevail unless some heavy counterweight appears."   Lauritzen v.
Larsen, 345 U.S. 571, 586 (1953).   More recently, however, the
Second Circuit has instructed that, "[g]enerally, we look to the
law of the ship's flag [as the determinative factor] only if the
shipowner is a party."  Rationis Enterprises. Inc. of Panama, 426
F.3d at 586.   In the present case, while the helicopter's owner,
Copterline, is currently not a party, defendants may bring
counterclaims against Copterline after a ruling on this motion.
HRT sought affirmative relief through an indemnity counterclaim
against plaintiffs Frederiksson and Peurala which was voluntarily
dismissed without prejudice.   See Doc. ##37, 145.

home; and (4) applicable law" are either neutral or weigh in favor of resolving the dispute in Finland.  With this finding, the Court has concluded its consideration of the third step of the <u>forum</u> <u>non</u> <u>conveniens</u> analysis, examining the private and public interests at stake in this litigation. <u>See</u> <u>Iragorri</u>, 274 F.3d 65.  For the reasons discussed in the previous sections, these private and public interests weigh decisively in favor of adjudicating the case in the courts of Finland.  <u>See</u> <u>In re Air Crash Over the Taiwan Strait on May 25, 2002</u>, 331 F. Supp. 2d 1176, 1209-10 (C.D. Cal. 2004) ("Although plaintiffs present no argument regarding the <u>Lauritzen</u> factors, a brief preliminary review indicates that Taiwan law would likely govern the action if admiralty choice of law rules were used. The accident occurred in Taiwan's territorial waters; the 'law of the flag' indicates that Taiwanese law should apply, as China Airlines is a Taiwanese carrier and Flight CI611 involved an aircraft registered in Taiwan; the vast majority of those killed in the accident were citizens and residents of Taiwan; China Airlines' allegiance and base of operations are located in Taiwan; the majority of the decedents purchased their tickets in Taiwan; and Taiwan is an accessible forum."); <u>Satz v. McDonnell Douglass Corp.</u>, 244 F.3d 1279 (11th Cir. 2001) (agreeing that foreign law applied where all the deceased passengers were foreign citizens, the airline at issue was foreign owned and did not operate in the United States,

and the accident occurred overseas).

Thus, the Court finds that: (1) plaintiffs' choice of forum deserves some deference, but not as much deference as if plaintiffs were citizens of the United States; (2) Finland is an adequate alternative forum; and (3) the private and public factors favor adjudicating this dispute in Finland.  As a result, after giving full consideration to the three-step process set out by the Second Circuit in <u>Iragorri</u>, the court finds that the balance is strongly in favor of the defendants' motion.  <u>See</u> <u>Gulf Oil Corp.</u>, 330 U.S. at 508.  The reduced deference given to the plaintiffs' choice of the District of Connecticut is not enough to outweigh the significant factors that favor the courts of Finland.  <u>See</u> <u>Iragorri</u>, 274 F.3d at 74-75.  Accordingly, Defendants' Motions to Dismiss for <u>forum</u> <u>non</u> <u>conveniens</u> is granted.

<u>CONCLUSION</u>

For the foregoing reasons, defendant H.R. Textron's Motion to Dismiss **[Doc. #60]** is **GRANTED**, provided that: (1) defendants consent to jurisdiction and to accept process in any suit plaintiffs file in Finland on claims that arise out of the facts of the instant suit; (2) defendants waive any statute of limitations defense(s) that may be available to them in Finland that arose on or after the date of this lawsuit, so long as

51

litigation is pursued in Finland within 120 days after dismissal of this civil action; (3) defendants make available for discovery and for trial, at their own expense, any documents, or witnesses, including retired employees, within their control that are needed for a fair adjudication of the plaintiffs' claims; (4) defendants will not act to prevent plaintiffs from returning to this court if the Finnish courts decline to accept jurisdiction of this action, if it is filed here within thirty days of the Finnish court's ruling; and (5) defendants agree to pay any judgment awarded by the Finnish courts.

Any objections to this recommended ruling must be filed with the Clerk of the Court within ten (10) days of the receipt of this order. Failure to object within ten (10) days may preclude appellate review. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 72.2 of the Local Rules for United States Magistrates; Small v. Secretary of H.H.S., 892 F.2d 15 (2d Cir. 1989)(per curiam); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995).


Dated at Bridgeport, this 2nd day of September 2009.


\_\_/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE